## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TERESA MACON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:16-cv-01085-MHH** |
| | } | |
| **NANCY BERRYHILL,** | } | |
| **Acting Commissioner of the** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Teresa Macon seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Ms. Macon's claims for a period of disability, disability insurance benefits, and supplemental security income. After careful review, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Macon applied for a period of disability, disability insurance benefits and, supplemental security income on February 20, 2013. (Doc. 6-5, pp. 2-3). Ms. Macon alleges that her disability began on September 15, 2012. (Doc. 6-5, pp. 2-3). The Commissioner initially denied Ms. Macon's claims on May 31, 2013.

(Doc. 6-5, pp. 2-3).   Ms. Macon requested a hearing before an Administrative Law Judge (ALJ).   (Doc. 6-6, p. 2).   The ALJ issued an unfavorable decision on October 30, 2014.  (Doc. 6-4, pp. 11-24).   On April 29, 2016, the Appeals Council declined Ms. Macon's request for review (Doc. 6-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c).

## II.    STANDARD OF REVIEW

The scope of review in this matter is limited.   "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings.   "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).   If substantial evidence

supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Macon has not engaged in substantial gainful activity since September 15, 2012, the alleged onset date. (Doc. 6-4, p. 13). The ALJ determined that Ms. Macon suffers from the following severe impairments: insulin dependent diabetes mellitus, diabetic neuropathy, hypertension, obesity, metabolic syndrome, and status post left nephrectomy. (Doc. 6-4, p. 13). The ALJ concluded that Ms. Macon has the following non-severe impairments: depression, hyperlipidemia, and lumbago. (Doc. 6-4, pp. 14-16). Based on a review of the medical evidence, the ALJ concluded that Ms. Macon does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 6-4, pp. 16-18).

In light of Ms. Macon's impairments, the ALJ evaluated Ms. Macon's residual functional capacity or RFC. The ALJ determined that Ms. Macon has the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can engage in no more than frequent pushing/pulling with the bilateral lower extremities; she is precluded from climbing ladders/ropes/scaffolds; she is precluded from concentrated exposure to extreme cold, extreme heat, humidity, or pulmonary irritants; she is precluded work around unprotected heights; and she should avoid hazardous moving machinery.

(Doc. 6-4, p. 18).

Based on this RFC, the ALJ concluded that Ms. Macon is not able to perform her past relevant work as a store laborer, poultry deboner, hand packager, teacher's aide, or cashier.  (Doc. 6-4, p. 22).  Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Macon can perform, including telephone quotation clerk, charge account clerk, and addressing clerk.  (Doc. 6-4, p. 23).  Accordingly, the ALJ determined that Ms. Macon has not been under a disability within the meaning of the Social Security Act.  (Doc. 6-4, p. 24).

## IV.   ANALYSIS

Ms. Macon argues that she is entitled to relief from the ALJ's decision because the Appeals Council failed to properly consider new evidence, the ALJ did not properly evaluate the medical opinion evidence, the ALJ did not consider all of Ms. Macon's impairments or combination of impairments, and the ALJ did not properly evaluate Ms. Macon's subjective complaints of pain.

### A.    Ms. Macon's New Evidence Does Not Warrant Remand.

While her case was pending before the Appeals Council, Ms. Macon submitted additional evidence for the Appeals Council's review, including treatment notes from visits to CED Mental Health dated December 11, 2014 through January 13, 2016.  (Doc. 6-3, pp. 9-29, 33-53).  Ms. Macon argues that the

Appeals Council erroneously failed to consider this new evidence that post-dates the ALJ's May 30, 2014 decision. (Doc. 8, pp. 20-31; Doc. 10, pp. 1-4).

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). The Appeals Council must review evidence that is new, material, and chronologically relevant. *Ingram,* 496 F.3d at 1261. The Court reviews *de novo* whether supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

Ms. Macon contends that the Appeals Council did not consider whether her new evidence is chronologically relevant. (Doc. 8, p. 21). Her argument rests on this paragraph from the Appeals Council's decision:

> We also looked at medical records from CED Mental Health dated December 11, 2014, through March 3, 2015 – 21 pages and medical records from CED Mental Health dated April 29, 2015, through January 13, 2016 – 21 pages. The Administrative Law Judge decided your case through October 30, 2014. This new information is **about a later time**. Therefore, it does not affect the decision about whether you were disabled begging on or before October 30, 2014.

(Doc. 8, p. 21) (quoting Doc. 6-3, p. 3) (emphasis in Appeals Council's decision). The Eleventh Circuit Court of Appeals rejected a similar argument in *Hargress v.*

*Soc. Sec. Admin., Comm'r*, --- F.3d ----, 2018 WL 1061567 (11th Cir. Feb. 27, 2018). The Eleventh Circuit stated:

> the record does not support Hargress's claim that the Appeals Council refused to consider her new evidence—the medical records from Drs. Teschner and Sparks and from Trinity Medical Center dated after the ALJ's hearing decision—without considering whether it was chronologically relevant. The Appeals Council stated that the new records were "about a later time" than the ALJ's February 24, 2015 hearing decision and "[t]herefore" the new records did "not affect the decision about whether [Hargress was] disabled beginning on or before February 24, 2015." In short, the Appeals Council declined to consider these new medical records because they were not chronologically relevant. The Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually. See *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).

2018 WL 1061567 at *6. The rationale in *Hargress* applies equally here.

Moreover, although the CED Mental Health treatment records constitute "new evidence" in that the records contain information that does not appear elsewhere in the administrative record, the new mental health records do not assist Ms. Macon because the evidence is not chronologically relevant. Evidence is chronologically relevant if it relates to the period on or before of the ALJ's decision. 20 C.F.R. § 404.970(b). A medical evaluation conducted after the ALJ's decision may be chronologically relevant if it pertains to conditions that pre-dated the ALJ's opinion. *Washington*, 806 F.3d at 1322-23 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)). In *Washington*, a consultative examiner provided an opinion regarding a claimant's mental condition. The opinion post-

dated the ALJ's decision, but the opinion was chronologically relevant because the examiner indicated in his report that he based his opinion on the claimant's reports that "he had experienced hallucinations throughout his life," the examiner reviewed the claimant's "mental health treatment records from the period before the ALJ's decision reflecting that [the claimant] repeatedly reported experiencing auditory and visual hallucinations," and the record contained no evidence that the claimant's condition had declined following the ALJ's decision. *Washington*, 806 F.3d at 1322; *see Hargress*, 2018 WL 1061567 at *6 (stating that in *Washington*, "[t]his Court concluded that the psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision.").

Unlike the consultative examiner's report in *Washington*, Ms. Macon's new evidence does not demonstrate that the providers who treated her after the ALJ rendered his decision reviewed treatment records that pre-date the ALJ's decision and speak to Ms. Macon's mental health condition during the relevant time period. (Doc. 6-3, pp. 9-29, 33-53). The therapists' and physicians' notes appear to be based on their review of Ms. Macon's condition between December 11, 2014 and January 13, 2016 and on her reports of her mental health history from a period that

pre-dates the relevant period relating to her benefits application.  (Doc. 6-3, pp. 9-29, 33-53).[1]  In addition, it appears that many of the mental health symptoms for which Ms. Macon received treatment following the ALJ's decision relate to the unfortunate death of her fiancé shortly before the ALJ denied her application for benefits.  (*See, e.g.,* Doc. 6-3, pp. 40, 49).  The records on which Ms. Macon relies suggest that her mental health deteriorated after the ALJ issued his opinion. Therefore, Ms. Macon's "new evidence was not chronologically relevant," and "the Appeals Council was not required to consider it."  *Hargress*, 2018 WL 1061567, at *7.

After the parties submitted their initial briefs, Ms. Macon filed a notice of supplemental authority in which she contends that her new evidence is chronologically relevant in light of the Eleventh Circuit's unpublished decision in *Hunter v. Soc. Sec. Admin., Comm'r*, 705 Fed. Appx. 936 (11th Cir. 2017).  (Doc. 12).  *Hunter* does not assist Ms. Macon.  In *Hunter*, the Eleventh Circuit held that opinions contained in evidence that post-dated the ALJ's decision were chronologically relevant because the psychologist "reviewed [the claimant's] medical records from the period before the ALJ's decision in preparing the evaluation," and the psychologist "considered [the claimant's] statements about the same period, including her history of panic attacks."  *Hunter*, 705 Fed. Appx. at

---

[1] Ms. Macon reported suicide attempts in approximately 2000 and 2008.  (Doc. 6-3, p. 49).

940.  In addition, the psychologist explicitly stated that his opinions related back to the date of the ALJ's decision.  *Hunter*, 705 Fed. Appx. at 940.  Unlike the evaluation in *Hunter*, there is no evidence that Ms. Macon's mental health treatment providers reviewed her medical records from the relevant period or relied on reports of symptoms from the relevant period.  Moreover, unlike the evaluation in *Hunter*, there is no explicit statement in the CED Mental Health Records indicating that the evaluations relate back to the date of the ALJ's decision.  (Doc. 6-3, pp. 9-29, 33-53).  Therefore, *Hunter* is not persuasive.

### B.    The ALJ Properly Evaluated the Opinion Evidence.

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel,* 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)); *see also McClurkin v. Social Sec. Admin.*, 625 Fed. Appx. 960, 962 (11th Cir. 2015) (same).  An ALJ must give considerable weight to a treating physician's medical opinion if the opinion is supported by the evidence and consistent with the doctor's own records.  *See Winschel*, 631 F.3d at 1179.  An ALJ may refuse to give the opinion of a treating physician "substantial or considerable weight . . . [if] 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding;

or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41; *see also Crawford*, 363 F.3d at 1159. "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error." *Gaskin*, 533 Fed. Appx. at 931.

The opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)); *see also Eyre v. Comm'r, Soc. Sec. Admin.*, 586 Fed. Appx. 521, 523 (11th Cir. 2014) ("The ALJ owes no deference to the opinion of a physician who conducted a single examination: as such a physician is not a treating physician.").

### 1. Substantial Evidence Supports the ALJ's Decision to Give Little Weight to Dr. Odjegba's Opinion.

On May 23, 2014, for purposes of Ms. Macon's disability evaluation, Ms. Macon's treating physician, Dr. Ochuko Odjegba, completed a physical capacities evaluation of Ms. Macon. (Doc. 6-11 p. 19). Dr. Odjegba opined that Ms. Macon can sit for three hours at a time, stand for two hours at a time, and walk for 15 minutes at a time. (Doc. 6-11 p. 19). According to Dr. Odjegba, Ms. Macon must lie down, sleep, or sit with her legs propped above waist level for four hours in an 8-hour work day. (Doc. 6-11 p. 19). In addition, Dr. Odjegba stated that Ms. Macon can perform tasks for one hour before needing a rest or break. (Doc. 6-11

p. 19). Dr. Odjegba explained that the following conditions caused Ms. Macon's limitations: bilateral lower extremity peripheral neuropathy, unilateral nephrectomy, and diabetes. (Doc. 6-11 p. 19).

The ALJ gave little weight to Dr. Odjegba's opinion because "[i]t is not consistent with or supported by [Dr. Odjegba's] own treatment notes." (Doc. 6-4, p. 20). The ALJ explained that "Dr. Odjegba's clinical findings and generally routine and conservative treatment of [Ms. Macon's] conditions in no way support the extreme limitations set forth in his opinion." (Doc. 6-4, p. 20).

Ms. Macon saw Dr. Odjegba approximately 20 times between December 2010 and May 2014. (Doc. 6-9, pp. 18, 23, 27, 31, 34, 37, 41, 50; Doc. 6-10, pp. 55, 59, 63, 69, 73, 80; Doc. 6-11, pp. 20, 26, 31, 36, 41, 47, 52). On a handful of occasions, Dr. Odjegba explained that Ms. Macon's diabetes was uncontrolled because she was not compliant with her medication and home testing (Doc. 6-9, pp. 18, 20; Doc. 6-10, pp. 63, 80), but many of Dr. Odjegba's treatment notes indicate that Ms. Macon was compliant on her medication and that she had improved diabetes readings (Doc. 6-9, p. 27, 31; Doc. 6-10, pp. 55, 59, 68; Doc. 6-11, pp. 26, 36, 41). By April and May 2014, Ms. Macon's diabetes was better controlled and stable. (Doc. 6-11, pp. 47, 52).

Starting in 2013, Ms. Macon intermittently complained of numbness and tingling in her feet, and Dr. Odjegba diagnosed bilateral neuropathy. (Doc. 6-9, p.

50; Doc. 6-11, pp. 26, 31, 52). But Dr. Odjegba's treatment notes do not contain limitations associated with Ms. Macon's neuropathy or provide for treatment or therapy aside from medication. (Doc. 6-9, pp. 50-53; Doc. 6-11, pp. 26-35, 52-56). In addition, with the exception of reports of back pain and tenderness on three occasions (Doc. 6-10, pp. 63, 68; Doc. 6-11, p. 41), Ms. Macon's records reflect that her physical examinations typically had benign results, (Doc. 6-9, pp. 29, 32, 35, 39, 43-44, 52; Doc. 6-10, pp. 56-57, 65, 71, 76, 82-83; Doc. 6-11, pp. 23, 34, 39, 44, 50, 55).

Accordingly, the Court finds that substantial evidence supports the ALJ's decision to give Dr. Odjegba's opinion little weight. *See e.g., Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence); *Roth v. Astrue*, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (finding that substantial evidence supported the ALJ's determination that the treating physician's opinion "should not be assigned substantial weight because it was inconsistent with the record as a whole and not supported by the doctor's own medical records."). Based on the applicable legal standard, the Court must accept the weight that the ALJ assigned to Dr. Odjegba's assessments, even though there is some evidence in the record that

supports those assessments. *See Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.").

### 2. Substantial Evidence Supports the ALJ's Decision to Give Dr. Warren's Opinion Little Weight.

On May 30, 2014, Dr. Jarrod Warren examined Ms. Macon at her attorney's request. (Doc. 6-11, p. 61). Ms. Macon reported a history of diabetes, unilateral kidney, hypertension, lower extremity edema, and low back pain. (Doc. 6-11, p. 61). Ms. Macon complained of weight gain, fatigue, weakness, insomnia, vision impairment, dryness of mouth, lower extremity edema, shortness of breath, orthopnea, wheezing, nausea, heartburn, nocturia, night sweats, headaches, joint pain, easy bruising, rash, neuropathy, dizziness, anxiety, excessive worries, depression, and agitation. (Doc. 6-11, p. 62).

During the examination, Ms. Macon was in no acute distress, her neck was supple, and her heart displayed a regular rate and rhythm. (Doc. 6-11, p. 62). Ms. Macon's lungs were clear, and she showed no increased difficulty breathing. (Doc. 6-11, p. 62). Her extremities displayed no clubbing or cyanosis. (Doc. 6-11, p. 63). Ms. Macon had no focal deficits, and her cranial serves were intact. (Doc. 6-11, p. 63). Ms. Macon had normal reflexes and normal vibratory and temperature sensations. (Doc. 6-11, p. 63). Dr. Warren noted that Ms. Macon had "[e]arly

chronic stasis dermatitis changes" in both legs "with darkening of the skin." (Doc. 6-11, p. 63).  Ms. Macon had full rotational movement and normal forward and lateral flexion in her neck.  (Doc. 6-11, p. 63).  Ms. Macon's back had normal flexion, minimally reduced extension, and minimal decreased rotational movement to the left with pain.  (Doc. 6-11, p. 63).  Ms. Macon had 5/5 grip strength in her upper extremities and 4/5 strength in her lower extremities.  (Doc. 6-11, p. 63).

Based on his examination, Dr. Warren diagnosed uncontrolled diabetes, uncontrolled hypertension, peripheral neuropathy, unilateral kidney (with suspected early chronic renal insufficiency), chronic lower extremity edema, chronic lumbago, migraine headaches, tobacco abuse disorder, morbid obesity, GERD, and dyslipidemia. (Doc. 6-11, p. 64).  Dr. Warren explained that:

> Ms. Macon has numerous uncontrolled and progressive medical issues. The combination of diabetes, [hypertension], and neuropathy are her primary concerns.  In addition to this, her lower extremity edema brings her the most discomfort.  She has required increasing doses of insulin to attempt to manage her diabetes. I suspect that her dietary compliance is minimal, given her size. With the development of her worsening renal function, I suspect that her poorly controlled diabetes, hypertension, weight, etc. is starting to show its effects on her single kidney.  The longer these symptoms are remain poorly controlled, the further damage she is likely to acquire.
>
> She reports some chronic low back pain that she has contributed [sic] to arthritis.  She only treats this with over the counter medications at present.

It is difficult to completely ascertain the true time frame of current limitations. Her disease processes have slowly progressed over the past several years, and have been most pronounced over the last 2 years.

(Doc. 6-11, p. 64).

Dr. Warren also completed an undated physical capacities evaluation on Ms. Macon's behalf. (Doc. 6-11, p. 60). Dr. Warren opined that Ms. Macon can sit for three to four hours at a time, stand for two hours at a time, and walk for 15 minutes at a time. (Doc. 6-11, p. 60). According to Dr. Warren, Ms. Macon must lie down, sleep, or sit with her legs propped at waist level or above for three to four hours in an 8-hour work day. (Doc. 6-11, p. 60). Dr. Warren opined that Ms. Macon can perform a task for one hour before needing a rest or break. (Doc. 6-11, p. 60). Dr. Warren stated that Ms. Macon's lower extremity peripheral neuropathy, uncontrolled diabetes, uncontrolled hypertension, and lower extremity edema cause these limitations. (Doc. 6-11, p. 60).

The ALJ assigned little weight to Dr. Warren's opinion because the opinion "is not consistent with or supported by the record as a whole, specifically Dr. Odjegba's clinical findings and generally routine and conservative treatment of [Ms. Macon's] conditions." (Doc. 6-4, p. 21). The ALJ stated that "[t]he objective medical evidence in the record in no way support[s] the extreme limitations set forth in [Mr. Warren's] opinion." (Doc. 6-4, p. 21).

Dr. Warren's opinion is nearly identical to Dr. Odjegba's opinion. For the same reasons that, on the whole, Dr. Odjegba's treatment notes do not support his opinion, the record does not support the limitations that Mr. Warren identified in the physical capacities evaluation which he completed. *See supra* pp. 11-12. In addition, Dr. Warren's examination findings do not support his opinion. Notably, Ms. Macon had 4/5 strength in her lower extremities, and her lower extremities had normal reflexes and normal vibratory and temperature sensations. (Doc. 6-11, p. 63). Also, although Dr. Warren explained that Ms. Macon's lower extremity edema causes her the most discomfort, Dr. Warren made no clinical or examination finding of edema, and Ms. Macon's treatment notes from her visits with Dr. Odjegba demonstrate that she had edema in her lower extremities on only one occasion in March 2011. (Doc. 6-9, p. 32; Doc. 6-11, pp. 62-64). Therefore, substantial evidence supports the ALJ's decision to give little weight to Dr. Warren's opinion. *See e.g.*, *McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion.").

## C. The ALJ Properly Considered Ms. Macon's Severe Impairments.

At step two, the ALJ concluded that Ms. Macon has the following severe impairments: insulin dependent diabetes mellitus, diabetic neuropathy, hypertension, obesity, metabolic syndrome, and status post left nephrectomy.

(Doc. 6-4, p. 13).  Ms. Macon argues that the ALJ erred by failing to find other severe impairments including depression, fatigue, and insomnia.  (Doc. 8, pp. 39-40).  Ms. Macon's argument fails for two reasons.

First, "step two requires only a finding of 'at least one' severe impairment to continue on to the later steps."  *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 949, 951 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)); *see also Packer v. Comm'r of Soc. Sec.*, 542 Fed. Appx. 890, 892 (11th Cir. 2013) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied. Indeed, since the ALJ proceeded beyond step two, any error in failing to find that Packer suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless.").  As noted, based on his review of the record in Ms. Macon's case, the ALJ identified six severe impairments.  Therefore, the ALJ's failure to identify other alleged severe impairments – if there are any – is harmless error.

Second, with respect to fatigue and insomnia, Ms. Macon did not raise these impairments as a basis for her disability.  (Doc. 6-4, pp. 40-41; Doc. 6-8, p. 23). Because Ms. Macon did not raise fatigue and insomnia as a basis for her disability, the ALJ had no obligation to consider them.  *See Robinson v. Astrue,* 365 Fed. Appx. 993, 995 (11th Cir. 2010) (finding that the claimant "did not allege that she

was disabled due to CFS either when she filed her claim or at her May 2006 hearing. Consequently, the ALJ had no duty to consider Robinson's CFS diagnosis.").

### D. The ALJ Properly Considered Ms. Macon's Combination of Impairments.

Ms. Macon contends that the ALJ did not consider the combined effects of her impairments. (Doc. 8, pp. 40-42). When an ALJ finds several impairments, the ALJ must consider the impairments in combination. The Eleventh Circuit has held that an ALJ satisfies this duty by stating that he considered whether the claimant suffered from any impairment or combination of impairments. *See e.g.*, *Wilson v. Barnhart,* 284 F.3d 1219, 1224-25 (11th Cir. 2002) (reversing a district court's determination that an ALJ did not consider or discuss the cumulative effects of a claimant's impairments where the ALJ explicitly stated that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed" in the regulations); *Hutchinson v. Astrue,* 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that the ALJ's statement that [claimant] "did not have an 'impairment, individually or in combination' that met one of the listed impairments . . . shows that the ALJ considered the combined effects of [claimant's] impairments during her evaluation"); *see also Robinson v. Comm'r of Social Sec.*, 649 Fed. Appx. 799, 801 (11th Cir. 2016) ("[W]e may conclude that an ALJ properly considered a combination of impairments if the ALJ stated that

the [claimant] is not suffering from any impairment or a combination of impairments of sufficient severity.").

In this case, the ALJ explicitly stated that Ms. Macon does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (Doc. 6-4, p. 16). This statement demonstrates that the ALJ considered the combined effects of Ms. Macon's impairments.

### E. Substantial Evidence Supports the ALJ's Analysis of Ms. Macon's Subjective Complaints of Pain.

Ms. Macon argues that the ALJ did not properly evaluate her subjective complaints of pain because the ALJ did not follow SSR 16-3p, the ALJ failed to state adequate reasons for rejecting Ms. Macon's testimony about the limiting effects of her pain, and the ALJ drew adverse inferences from Ms. Macon's lack of treatment for her kidney disease. The Court disagrees.

### 1. SSR 16-3p Does Not Apply Retroactively.

Ms. Macon asks the Court to remand this action to the Commissioner, so that the ALJ may reconsider her subjective complaints of pain pursuant to Social Security Ruling 16-3p. (Doc. 8, pp. 43-46). On March 28, 2016, SSR 16-3p superseded SSR 96-7p, the ruling concerning subjective complaints of pain that was in effect when the ALJ issued a decision in this case. *See* 2016 WL 1237954, at *1. Ms. Macon argues that SSR 16-3p applies retroactively to the ALJ's October 30, 2014 decision and that the ALJ must evaluate her subjective

complaints consistent with the new ruling. (Doc. 8, p. 43). Ms. Macon's argument

is foreclosed by the Eleventh Circuit's decision in *Hargress v. Soc. Sec. Admin.,*

*Comm'r*, --- F.3d ----, 2018 WL 1061567 (11th Cir. Feb. 27, 2018). In *Hargress*,

the claimant argued that the remand was appropriate because the ALJ did not

evaluate the intensity, persistence, and limiting effects of her symptoms pursuant to

SSR 16-3p. *Hargress*, 2018 WL 1061567, at *4. The Eleventh Circuit disagreed,

explaining:

> SSR 16-3p rescinded SSR 96-7p, which provided guidance on how to evaluate the credibility of a claimant's statements about subjective symptoms like pain. *See* SSR 16-3p, 81 Fed. Reg. 14166, 14167 (March 9, 2016); SSR 96-7p, 61 Fed. Reg. 34,483 (June 7, 1996). The new ruling eliminated the use of the term "credibility" in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will "not assess an individual's overall character or truthfulness" but instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities. . . ." SSR 16-3p, 81 Fed. Reg. 14166, 14171. SSR 16-3p further explains that adjudicators will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *Id.* at 14170.

*Hargress*, 2018 WL 1061567, at *4. The Eleventh Circuit continued:

> [T]he U.S. Supreme Court has held that administrative rules generally are not applied retroactively. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 471 (1988) ("Retroactivity is not favored in the law. . . . and administrative rules will not be construed to have retroactive effect unless their language requires this result.").

SSR 16-3p contains no language suggesting, much less requiring, retroactive application. Indeed, SSR 16-3p explicitly states that it became effective on March 28, 2016, which "actually points the other way." *See Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1351 (11th Cir. 2005) (declining to apply state agency rule retroactively where the rule expressly provided an effective date, explaining that "[t]here is no point in specifying an effective date if a provision is to be applied retroactively"). Thus, SSR 16-3p applies only prospectively and does not provide a basis for remand.

*Hargress*, 2018 WL 1061567, at *5. Consistent with *Hargress*, the Court finds that SSR 16-3p does not apply retroactively to the ALJ's October 30, 2014 decision.

### 2. The ALJ Properly Evaluated Ms. Macon's Subjective Complaints of Pain.

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Commissioner of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). If an ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons

for doing so." *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough. . . ." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam); *see* SSR 96-7p, 1996 WL 374186 at *2 ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

During her administrative hearing, Ms. Macon testified that she cannot work because she has uncontrolled diabetes, high blood pressure, and swelling and "a lot of pain" in her legs. (Doc. 6-4, p. 41). Ms. Macon also stated that she suffers from depression and headaches. (Doc. 6-4, p. 41).

Ms. Macon explained that she must elevate her legs "about four or five hours out of the day." (Doc. 6-4, p. 43). Elevating her legs helps the swelling, but if Ms. Macon stands again for three or four hours, her legs "swell right back up again." (Doc. 6-4, p. 43). Ms. Macon testified that she can stand for about 15 to 20 minutes before she experiences "sharp pains up [her] legs," and her legs start aching. (Doc. 6-4, p. 44). Her leg pain interferes with Ms. Macon's ability to sleep. (Doc. 6-4, p. 45).

In a function report that she completed in March 2013, Ms. Macon stated that she has trouble lifting, squatting, bending, standing, walking, kneeling, stair climbing, seeing, completing tasks, concentrating, and using her hands. (Doc. 6-8, p. 19). Ms. Macon also explained that her conditions make her weak, tired, and dizzy. (Doc. 6-8, p. 19).

The ALJ summarized Ms. Macon's testimony. (Doc. 6-4, p. 19). The ALJ properly recited the pain standard and stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. I have given the claimant the benefit of doubt and more than fully accounted for her credible symptoms by limiting her to sedentary work and further limiting her use of her bilateral lower extremities. In addition, I have accommodated her symptoms and any medication side effects with additional environmental restrictions.

(Doc. 6-4, p. 22). Ms. Macon argues that "[t]he 'reasons' set out in the body of the decision by the ALJ are not adequate reasons for finding [Ms. Macon] not credible, and the ALJ failed to modify the residual functional capacity for what he called [Ms. Macon's] 'credible symptoms.'" (Doc. 8, p. 50). The Court is not persuaded.

The ALJ reviewed the objective medical evidence and Ms. Macon's daily activities as part of his evaluation of her subjective complaints of pain, and

substantial evidence supports the ALJ's decision that Ms. Macon's "alleged inability to perform all substantial gainful activity simply is not corroborated by the evidence in the record considered as a whole." (Doc. 6-4, p. 22).

With respect to Ms. Macon's testimony about her diabetic neuropathy and the corresponding swelling and pain in her legs, the ALJ noted that none of Dr. Odjegba's treatment notes "include recommendations that [Ms. Macon] elevate her legs." (Doc. 6-4, p. 16; *see also e.g.*, Doc. 6-9, pp. 50-53; Doc. 6-11, pp. 26-35, 52-56). The ALJ also explained that "the record clearly reflects" that Ms. Macon's diabetes and high blood pressure "are better controlled and stable with compliance." (Doc. 6-4, p. 20; *see also* Doc. 6-9, pp. 18, 20, 27, 31; Doc. 6-10, pp. 55, 59, 63, 68, 80; Doc. 6-11, pp. 26, 36, 41). Substantial evidence supports the ALJ's decision to discredit Ms. Macon's testimony regarding her diabetic neuropathy symptoms because Ms. Macon's subjective complaints of pain are inconsistent with the objective medical evidence. *See Duval v. Comm'r of Soc. Sec.*, 628 Fed. Appx. 703, 712 (11th Cir. 2015) ("The ALJ explained that Mr. Duval's testimony was not credible to the extent it was unsupported by the objective medical evidence and then discussed at length why similar opinions from Mr. Duval's treating medical providers were unsupported by the record. From this discussion, we can clearly infer what testimony from Mr. Duval the ALJ found lacking in credibility and why it was discredited.")

Regarding Ms. Macon's daily activities, the ALJ noted that Ms. Macon is capable of walking up to half a mile; she has no problems with personal care; she prepares meals and performs household chores; she goes outside every day, shops, reads, watches television, spends time with others, and goes to church once a week. (Doc. 6-4, p. 19; *see also* Doc. 6-8, pp. 14-19). The ALJ concluded that "although [Ms. Macon] indicated some limitations with respect to her daily activities, she described daily activities that were not as limited as one would expect given her allegations of total disability." (Doc. 6-4, p. 19). The Eleventh Circuit has noted that "participation in everyday activities of short duration" does not necessarily disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). But the regulations expressly permit an ALJ to consider a claimant's activities of daily living when assessing a claimant's subjective complaints of pain. *See* 20 C.F.R. §§ 404.1529(c)(2)(3), 416.929(c)(2)(3). The Court finds no reversible error in the ALJ's consideration of Ms. Macon's activities of daily living. *See Carman v. Astrue*, 352 Fed. Appx. 406, 408 (11th Cir. 2009) ("The ALJ articulated various inconsistencies in Carman's evidence that a reasonable person could conclude supported the ALJ's finding that Carman's subjective complaints of pain were not entirely credible.").

Contrary to Ms. Macon's assertion, the ALJ modified his residual functional capacity assessment to account for Ms. Macon's credible symptoms by limiting her

to sedentary work. The ALJ found that Ms. Macon has the residual functional capacity to perform sedentary work "except that she can engage in no more than frequent pushing/pulling with bilateral lower extremities." (Doc. 6-4, p. 18). Based on this statement, Ms. Macon contends that the ALJ's residual functional capacity determination "provides no additional restrictions to the push/pull aspect of the sedentary residual functional capacity." (Doc. 8, p. 50). The ALJ's finding concerning Ms. Macon's ability to use her bilateral extremities to push and pull appears consistent with Dr. Warren's examination which revealed that Ms. Macon had 4/5 strength in her bilateral lower extremities. (Doc. 6-11, p. 63). Moreover, during her three and a half year course of treatment with Dr. Odjegba, Dr. Odjegba did not recommend that Ms. Macon limit her activity because of pain and swelling in her legs.

Nevertheless, to the extent that the ALJ's determination that Ms. Macon can engage in frequent pushing and pulling with her bilateral lower extremities constitutes error, the error is harmless. According to the regulations, sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a). By definition, under the regulations, a sedentary job does not require an individual to engage in pushing or pulling. The jobs that the ALJ determined that Ms. Macon can perform are "sedentary unskilled [] occupations" (Doc. 6-4, p. 23), and "[l]imitations or restrictions on the ability to push or pull generally will have little effect on the unskilled sedentary occupational base." SSR 96-9p, 1996 WL 374185, at *6.

### 3. If the ALJ Drew an Adverse Inference from Ms. Macon's Lack of Medical Treatment, the Error is Harmless.

In assessing a claimant's credibility, one factor that an ALJ may consider is the level of treatment that the claimant sought for the alleged disabling condition. SSR 96-7p, 1996 WL 374186, at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). But an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7; *see Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) ("[W]hile a remediable or

controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.") (internal quotation marks and citation omitted); *Brown v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 813, 817 (2011) ("[B]efore denying an application based on a claimant's failure to comply with prescribed medical care, the ALJ must consider whether the claimant is able to afford the medical care.") (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003)).

During her hearing, Ms. Macon explained that she had not seen a kidney specialist for her renal impairment because she does not have insurance. (Doc. 6-4, p. 44). In his decision, the ALJ acknowledged that Dr. Odjegba diagnosed diabetic nephropathy as a chronic problem and that Dr. Odjegba also diagnosed chronic renal disease on one occasion. (Doc. 6-4, p. 16; *see also* Doc. 6-9, pp. 25, 29, 36; Doc. 6-11, p. 29, 34, 50, 55). In addition, the ALJ explained that that some lab results in the administrative record suggest renal impairment. (Doc. 6-4, p. 16; *see also* Doc. 6-11, p. 47). The ALJ noted that Ms. Macon had not seen a nephrologist despite her doctor's recommendation, and therefore, "the functioning of [Ms. Macon's] remaining kidney is not entirely clear from the record as a whole." (Doc. 6-4, p. 16).

In his decision, the ALJ did not explicitly consider Ms. Macon's inability to afford treatment from a specialist. It is not clear from the ALJ's decision that he drew an adverse inference from Ms. Macon's lack of specialized treatment for her kidney problems. For example, the ALJ noted that Dr. Warren limited his diagnosis to "suspected early chronic renal insufficiency." (Doc. 6-4, p. 16; *see* Doc. 6-11, p. 64). The ALJ also stated that he "fully considered and accounted for the fact that [Ms. Macon] has only one kidney and may have some impaired kidney function." (Doc. 6-4, p. 21).

Assuming that the ALJ drew an adverse inference from Ms. Macon's lack of treatment for her renal impairments, Ms. Macon has not established reversible error because the ALJ did not rely solely on Ms. Macon's failure to see a nephrologist to make his disability determination. Thus, the ALJ's failure to consider Ms. Macon's inability to afford specialized treatment for kidney impairments is harmless error. *Ellison*, 355 F.3d at 1275 (ALJ's failure to consider claimant's ability to afford medication was not error because the ALJ, in finding that the claimant was not disabled, did not rely heavily on a finding of noncompliance with prescribed treatment); *Beegle v. Social Sec. Admin., Comm'r*, 482 Fed. Appx. 483, 487 (11th Cir. 2012) ("[R]eversible error does not appear where the ALJ primarily based her decision on factors other than non-compliance,

and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits.").

## V.  CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner's decision. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 5, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE